JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON GLEN CRISHER,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION et al.,<br><br>    Defendants. | Case No. 2:23-cv-02963-SB-PVC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS [DKT. NO. 40] |

    Plaintiff Clinton Crisher disputes certain activity on three credit card accounts attributed to him by Defendant U.S. Bank National Association and reported to three credit reporting agencies—Equifax Information Services, LLC, Experian Information Solutions, Inc., and TransUnion, LLC.  He sued alleging violations of the Fair Credit Reporting Act (FCRA) and three California statutes.  Dkt. No. 30.  Defendant now moves to compel arbitration.  Dkt. No. 40.  Because Plaintiff entered into valid arbitration agreements with Defendant and Plaintiff has not shown that the arbitration agreements are unconscionable or that Defendant waived its right to arbitrate, the Court grants the motion.

I.

    Plaintiff opened separate credit cards accounts with Defendant, including: (1) a Platinum Visa account; and (2) a Cash Plus account.[1]  *See* Dkt. No. 42 at 2; Dkt. No. 40-1 at 4–5.  With the opening of each account, Defendant sent Plaintiff a credit card agreement, Dkt. No. 40-3 at 5–11, 25–31, 45–51, that would become effective as soon as Plaintiff used the corresponding card.  *Id*. at 6, 26, 46.

---

[1] Plaintiff also opened an Altitude Go account.  He does not challenge any reporting activity on that account, however.

A few of the agreements' provisions—which are materially identical across the agreements—are relevant to the current dispute. Each agreement applies to a specific credit card account, such as the "U.S. Bank Platinum Visa Card Account." *Id*. at 6. The agreements state in bold at the beginning of the full terms on the second page: "This Agreement contains an arbitration provision (including a class action arbitration waiver). It is important that you read the entire Arbitration Provision section carefully." *Id*. The arbitration provisions cover the following claims:

> (1) Claims related to or arising out of this Agreement, or any prior or later versions of this Agreement as well as any changes to the terms of this Agreement; (2) Claims related to or arising out of any aspect of any relationship between us that is governed by this Agreement, whether based in contract, tort, statute, regulation, or any other legal theory; and (3) Claims that relate to the construction, scope, applicability, or enforceability of this arbitration provision. Claims include Claims that arose before we entered into this Agreement (such as Claims related to advertising) and after termination of this Agreement.

*Id*. at 10. And the agreements provide that they are governed by Ohio law and that any arbitration will be governed by the Federal Arbitration Act.[2] *Id*. at 9–10.

It is undisputed that Plaintiff applied for, received, and used each of the credit cards, although the parties raise numerous immaterial disputes about the dates and manner of applications and use. The initial account numbers for the cards differ from the account numbers referenced in later transactions, which Plaintiff contends reflects that they involve different accounts. For example, the Platinum Visa credit card was issued with an account number ending in -4306. Dkt. No. 42-1 ¶ 6. Defendant produces evidence that the account was subsequently assigned new account numbers ending in -8503, -4870, and -8756 because of disputes submitted by Plaintiff. Dkt. No. 40-2 ¶ 18. Plaintiff acknowledges receiving correspondence from Defendant reflecting account

---

[2] The Court applies Ohio law as specified in the agreement. The parties agree, however, that the outcome of the arbitration dispute is the same under California and Ohio law.

numbers that ended in -4870 and -8756.  Dkt. No. 42-1 ¶ 15.  He asserts that he "never activated a credit card on the Platinum Visa Account with an account number ending in -8756," id. ¶ 16, but this does not appear to reflect a genuine factual dispute.  Plaintiff neither argues nor produces any evidence to dispute that Defendant changed the account number on the Platinum Visa account.  Similarly, it is undisputed that Plaintiff applied for, received, and used the Cash Plus credit card with an account number ending in -7467.  Defendant produces uncontroverted evidence that the Cash Plus Account was subsequently assigned new account numbers ending in -9602, -7176, and -6957, although Plaintiff states that he did not activate a card with two of those numbers.  Dkt. No. 40-2 ¶ 27; Dkt. No. 42-1 ¶ 20.

      Plaintiff filed this FCRA action on March 13, 2023, in state court against U.S. Bancorp and the three credit reporting agencies, alleging that Plaintiff had been a victim of identity theft and that after he had paid off and closed his Bancorp accounts, Plaintiff received statements with different account numbers reflecting transactions he never made.  Dkt. No. 1-1.  U.S. Bancorp was served on March 21, 2023, and removed the case on April 19, 2023.  Dkt. No. 1.  After U.S. Bancorp (the parent of U.S. Bank) pointed out that it was not a proper party, Plaintiff filed a First Amended Complaint (FAC) correctly naming Defendant U.S. Bank on May 26, 2023.  Dkt. No. 30.  The FAC alleges claims for (1) violations of the FCRA, (2) violations of the California Consumer Credit Reporting Agencies Act, (3) violations of California Civil Code §§ 1798.92–1798.97; and (4) violations of California Penal Code § 530.8.  Id.  Plaintiff subsequently settled with the three credit reporting agencies.  Dkt. No. 46.  Meanwhile, Defendant moved to compel arbitration on June 30.  Dkt. No. 40.

II.

      The Federal Arbitration Act "declares a national policy favoring arbitration of claims that parties contract to settle in that manner." Preston v. Ferrer, 552 U.S. 346, 353 (2008) (cleaned up).  The Court's involvement is therefore limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008).  Under the Federal Arbitration Act, district courts must compel arbitration of claims covered by an enforceable arbitration agreement.  Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022); 9 U.S.C. § 3.

III.

Plaintiff raises three principal challenges to the arbitration. He contends that the reporting activity occurred on credit cards that are not subject to the arbitration agreements, that the arbitration agreements are unconscionable, and that Defendant waived its right to arbitrate. None of these arguments has merit.

A.

There is a presumption that courts decide arbitrability issues. *Oracle Am., Inc., v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). However, parties can agree to arbitrate even arbitrability—provided the agreement to do so is clear and unmistakable. *Id*. But challenges to the very existence of the contract are, in general, properly directed to the court. *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (addressing whether the parties formed a contract).

The contracts in this case contained a valid agreement to arbitrate. Whether an agreement exists is determined by analyzing "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009). Plaintiff acknowledges that he entered into the agreements, and he does not challenge their validity. Dkt. No. 42-1 at 3. Instead, he argues that the agreements do not apply to the charges at issue because the account numbers originally associated with those agreements changed, and he is challenging the reporting activity associated with the changed account numbers.

This argument misses the mark, which became clear at the hearing on the motion. Plaintiff's counsel acknowledged that the terms and conditions applicable to the reporting disputes in this case are found in the written agreements for the Visa Platinum and Cash Plus accounts. This acknowledgement is supported by the undisputed factual submission, which demonstrates that these agreements governed credit card accounts, not particular credit cards or particular credit card account numbers. *E.g.*, Dkt. No. 40-3 at 6; *cf. Errato v. American Express Co.*, 18-cv-1634-VAB, 2019 WL 3997010, at *14 (D. Conn. Aug. 23, 2019) (finding that the plaintiff conflated changes in credit card numbers with changes to the accounts). Thus, the challenge to the arbitration provision in those agreements is ultimately one of scope, not formation, as Plaintiff's counsel reasonably conceded at the hearing.

On the question of the scope of the arbitration agreement, the parties clearly and unmistakably agreed to delegate arbitrability to the arbitrator. Evidence of such an agreement may be demonstrated through "a course of conduct demonstrating assent or an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (cleaned up). Each arbitration provision expressly covers claims relating to the "scope, applicability, or enforceability" of the arbitration provision. Dkt. No. 40-1 at 3; *e.g.*, 40-3 at 10. This type of language has been held to "clearly and unmistakably" express the intent of the parties to delegate the question of arbitrability to arbitrators. *E.g.*, *Momot*, 652 F.3d at 988 (delegation provision referencing "validity or application" of the agreement encompassed arbitrability); *Gadomski v. Wells Fargo Bank N.A.*, 281 F.Supp.3d 1015, 1019–20 (E.D. Cal. 2018) (finding FCRA and CCCRAA claims covered by delegation provision); *Halliday v. Beneficial Financial I, Inc.*, 12-cv-708, 2013 WL 693022 at *3–5 (S.D. Ohio Feb. 26, 2013) (approving of delegation provision that covered "validity or enforceability" of the arbitration clause). Indeed, both parties agreed at the hearing that the scope of the arbitration agreements must be determined in arbitration.

B.

Next, Plaintiff asserts that the arbitration agreements are unconscionable. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (Ohio 2008); *accord Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (applying California law). Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power," while substantive unconscionability focuses "on overly harsh or one-sided results." *Tompkins*, 840 F.3d at 1023.

Under Ohio law, a determination of procedural unconscionability requires analyzing the "age, education, intelligence, business acumen, experience in similar transactions, whether terms were explained to the weaker party, and who drafted the contract." *Newland v. AEC S. Ohio College L.L.C.*, 47 N.E.3d 231, 234 (Ohio Ct. App. 2016). Plaintiff offers no evidence about his personal traits or business experience that would cast doubt on the enforceability of those agreements. Nor is his argument that the arbitration provisions are "buried deep within the account agreements" persuasive. Plaintiff does not claim that he was unaware of the arbitration provisions in the agreements, and the bold font on the second page of the agreement served to highlight the existence of those provisions. *E.g.*, Dkt. No.

40-3 at 6. While the contracts themselves take the form of adhesion contracts, such contracts are not necessarily procedurally unconscionable. *Newland*, 47 N.E.3d at 234 ("If all adhesion contracts were procedurally unconscionable, none of us would be bound by car lease/rental agreements, standard credit card agreements, standard cell phone agreements, or airplane tickets (to mention a few).").

Even if Plaintiff could show procedural unconscionability (and he has not on this record), he fails to show substantive unconscionability. He challenges two specific clauses within the arbitration provision: the clause requiring Defendant to pay the first $2,500 of the arbitration costs and the clause authorizing fee and cost shifting to the prevailing party when allowed by law. Both clauses are found in a single paragraph:

> Unless the applicable arbitration rules at the time of filing a Claim are more favorable to you, we will advance (i) all arbitration costs in an arbitration that we commence, and (ii) the first $2,500 in arbitration filing, administration, and arbitrator's fees in an arbitration that you commence. To the extent allowed by applicable law and our agreements, the arbitrator may award arbitration costs and attorneys' fees to the prevailing party.

*E.g.*, Dkt. No. 40-3 at 10.

That Plaintiff must bear some of the cost in arbitration is not enough to render the provision unconscionable. Litigation itself is not without cost. For Plaintiff to demonstrate that the cost of arbitration is "prohibitively expensive," he must make a detailed showing of the likely costs. *See Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000) ("[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."). Plaintiff has made no such showing, and thus his cost challenge fails. *See Qualls v. Wright Patt Credit Union*, 174 N.E.3d 874, 899 (Ohio Ct. App. 2021) ("Without some evidence that a party would be precluded from bringing a claim, the cost of arbitration, standing alone, is not a justifiable reason to find unconscionability."); *accord Flowers v. Citigroup, Inc.*, 12-cv-2748-CAB, 2013 WL 12075973, at *6 (S.D. Cal. Sept. 10, 2013) (applying California law and finding no substantive unconscionability where the "plaintiff does not produce any evidence to suggest that the expense of arbitration would be too burdensome").

Likewise deficient is Plaintiff's challenge to the prevailing-party clause. By its plain terms, this clause does not require fee and cost shifting. It does no more than place the arbitrator in the same position that a judge would occupy when deciding whether to award the prevailing party fees and costs. An arbitrator is only permitted to do so "[t]o the extent allowed by applicable law and our agreements." *E.g.*, Dkt. No. 40-3 at 10. Plaintiff has not shown that this limited authorization strays beyond the bounds of conscionability.

C.

Plaintiff's final argument to avoid arbitration—its claim of waiver—is unavailing. "Waiver is generally defined as an intentional relinquishment of a known right." *Albert v. Joralemon*, 271 F.2d 236, 239 (9th Cir. 1959); *Chubb v. Ohio Bur. of Workers' Comp.*, 690 N.E.2d 1267, 1269 (Ohio 1998) ("A waiver is a voluntary relinquishment of a known right."). Defendant's actions do not constitute an intentional or voluntary relinquishment of a known right.

A party "asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). There is no defined test to determine whether the second prong is met, so courts generally look to whether the party's actions "indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Id*. (cleaned up). Defendant had knowledge of the existing right, but it took no acts inconsistent with that right. On the contrary, Defendant raised the arbitration provision only a few weeks after removal in the Joint Rule 26(f) Report, Dkt. No. 19 at 5, it asserted arbitration as an affirmative defense in its answer one month later, Dkt. No. 33, and it filed the present motion shortly thereafter (before any discovery occurred or dispositive motions were filed, Dkt. No. 40. There has been no waiver at this early stage in the proceeding. *See Kersting v. UnitedHealth Group*, 23-cv-159-TWR, 2023 WL 4305127, at *9 (S.D. Cal. Jun. 29, 2023) (finding no Ninth Circuit precedent to support waiver when a party "moved to compel arbitration within approximately three months of being served and engaged only in removing and answering the complaint and, as ordered by the Court, exchanging preliminary disclosures").

IV.

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration, and this case is dismissed without prejudice so that the parties may pursue arbitration.  See *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that district courts have authority to dismiss a complaint when the arbitration clause encompasses all of the claims at issue).  The Court will retain jurisdiction as necessary to confirm or vacate any arbitration award.

IT IS SO ORDERED.

Date: August 22, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge