FILED

1  Clinton Glen Crisher
2  terrificdistraction@gmail.com
3  1422 N Kingsley Drive Apt 110
4  Los Angeles, CA 90027
5  323-447-2622
6  Plaintiff in Pro Per

2024 JUN 11  PM 1:46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY____ASH____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CLINTON GLEN CRISHER,<br><br>          Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION<br><br>          Defendant. | Case No. 2:23-cv-02963-SB-PVC<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO REVERSE DISMISSAL AND VACATE MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: June 28, 2024<br>Hearing Time: 8:30 a.m.<br>Courtroom: 6C<br>Judge: Hon. Stanley Blumenfeld, Jr. |

-1-      CASE NO. 2:23-CV-02963-SB-PVC

Plaintiff Clinton Glen Crisher submits this Reply to Defendant U.S. Bank National Association's Opposition to Motion to Reverse and vacate this Court's order dated August 22, 2023, which had granted U.S. Bank's motion to compel arbitration and dismiss the case (hereinafter the "Arbitration Order"). See ECF 68 (Crisher's motion); ECF 53 (Arbitration Order); ECF 40 (U.S. Bank's motion to compel arbitration).

## DISCUSSION

### I. Applicable Law

In 2019, the Legislature enacted section 1281.98 to curb a particular arbitration abuse. (Cvejic v. Skyview Capital, LLC (2023) 92 Cal.App.5th 1073, 1076 (Cvejic).) The abuse was that a defendant could force a case into arbitration but, once there, could refuse to pay the arbitration fees, thus effectively stalling the matter and stymying the plaintiff's effort to obtain relief. (Ibid.) The Legislature called this " ' "procedural limbo." ' " (Gallo v. Wood Ranch USA, Inc. (2022) 81 Cal.App.5th 621, 634 (Gallo).)

Section 1281.98 provides: "In an employment or consumer arbitration that requires . . . the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs . . . are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and *waives its right to compel* the employee or consumer to proceed with that arbitration as a result of the material breach." (§ 1281.98, subd. (a)(1), italics added.)

Subdivision (b) of section 1281.98 provides employees and consumers with a choice of forum upon breach—they may elect to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" or "[c]ontinue the arbitration proceeding" should the provider agree to continue.

Effective January 1, 2022, the Legislature amended section 1281.98 to include a new sentence in subdivision (a)(2): "Any extension of time for the due date shall be agreed upon by all parties." (Stats. 2023, ch. 478, § 17.)

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant Clinton Glen Crisher sued U.S. Bank asserting multiple claims arising from the Fair Credit Reporting Act, California Consumer Credit Reporting Agencies Act, California Civil Code §1798.92, et seq., and the California Penal Code § 530.8. U.S. Bank successfully compelled the case to arbitration.

**April 1, 2024 was the "due date" for payment of the arbitration fees.** Under section 1281.98(a)(1), U.S. Bank had to pay necessary fees and costs to continue the arbitration "within 30 days after the due date" to avoid breach. (§ 1281.98, subd. (a)(1).) Since February 29 was the due date, the statutory 30-day grace period expired no later than April 1, 2024. Indeed, AAA's February 29 letter emphasized that "payment must be received within 30 days from the date of this letter" and its email stated April 1, 2024 was the last day to remit payment. Neither party ever objected to these deadlines.

In 2019, when section 1281.97 and 1281.98 were added to the CAA with the passage of Senate Bill No. 707 (SB 707), the Legislature recognized that a " 'company's failure to pay the fees of an arbitration provider' " as required by an arbitration agreement or applicable law " 'hinder[ed] the efficient resolution of disputes and contravene[d] public policy.' " (De Leon, 85 Cal.App.5th at p. 750.) According to the bill's author: "SB 707 [ensures that] individuals who have been

forced to submit to mandatory arbitration to resolve an employment or consumer dispute would be provided with procedural options and remedies . . . when a company stalls or obstructs the arbitration proceeding by refusing to pay the required fees." (Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended Apr. 30, 2019, p. 6.)

Foremost among the remedies provided by SB 707 is that "if the fees or costs to initiate or continue an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration pursuant to existing law." (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 1.) Analysis of the bill further provided: "In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.), as amended May 20, 2019, p. 9.)

One of the Legislature's main objectives was to deter employers from strategically withholding payment of arbitration fees so that they could no longer stymie the ability of employees to assert their legal rights. To do this, the Legislature established strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment. Any untimely payment constituted a material breach regardless of the circumstances or status of the arbitration proceedings. The Legislature further

sought to provide employees clear guidance in the event of untimely payment and to have such breaches strictly enforced.

Courts that have considered the legislative history of sections 1281.97 or 1281.98 share these views. The court in De Leon, supra, 85 Cal.App.5th 740, observed that section 1281.98's "30-day deadline establishes a clear-cut rule for determining if a [company] is in material breach of an arbitration agreement." (De Leon, at p. 755.) The statute's "legislative history indicates the California Legislature sought a clear and unambiguous rule for courts to apply in determining whether late payment of arbitration fees by a drafting party constituted a material breach of an arbitration agreement." (Id. at p. 756.) The court in Cvejic v. Skyview Capital, LLC (2023) 92 Cal.App.5th 1073 (Cvejic), observed that "the Legislature sought a clear rule for determining whether the late payment of a fee by a drafting party constituted a material breach" and further observed that the legislative history and case law directed strict enforcement of section 1281.98. (Cvejic, supra, at p. 1078.) In construing section 1281.97, the court in Espinoza v. Superior Court (2022) 83 Cal.App.5th 761 (Espinoza), remarked: "[T]he Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline." (Id. at p. 776.) In short, the courts that have examined the legislative history agree the Legislature sought to establish a clear and unambiguous rule for determining a breach based on nonpayment as well as strict enforcement of the statute.

In Espinoza, supra, 83 Cal.App.5th 761, the appellate court reversed the trial court's conclusion that a defendant's late payment of an arbitration provider's invoice was "in 'substantial[ ] compliance' with the arbitration agreement and 'not in material breach,' because the delayed payment was due to ' "clerical error," ' and the delay

did not prejudice plaintiff." (Id. at p. 775.) The court found the "language of section 1281.97 is unambiguous. . . . [T]he triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the [employee]. The plain language therefore indicates the Legislature intended the statute to be strictly applied whenever a [company] failed to pay by the statutory deadline." (Espinoza, at p. 776.)

In Williams v. West Coast Hospitals, Inc. (2022) 86 Cal.App.5th 1054 (Williams), the trial court granted the plaintiffs' motion to withdraw from arbitration because the hospital, which was being sued for elder abuse among other claims, had not timely paid its share of arbitration fees under section 1281.98. (Williams, at p. 1063.) In affirming the order allowing the plaintiffs to withdraw, the court acknowledged that the hospital's "belated payment was unintentional" and that "the ensuing delay amounted to a few days" but concluded that "nothing in section 1281.98 as drafted depends on the intent or good faith of a particular [company] in a specific case. [Citations.] To further its stated purpose, the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment." (Williams, at pp. 1074–1075.)

Section 1281.98 entitled Crisher to withdraw from arbitration. It is that simple. The statute does not empower an arbitrator to cure a party's missed payment. There is no escape hatch for companies that may have an arbitrator's favor. Nor is there a hatch for an arbitrator eager to keep hold of a matter. As the trial court observed, 'If . . . the drafting party were permitted numerous continuances for failure to pay arbitration fees, therefore delaying the proceedings, [section 1281.98] would have

no meaning, force, or effect.' " (Cvejic, at p. 1078, italics added.)

## Does a Binding Arbitration Agreement Exist?

There is a genuine dispute of material fact concerning Plaintiff having (1) personally opened the disputed accounts and (2) accepted the Card Agreement's arbitration provision by either using the cards or failing to cancel the Accounts. In Hoganberry v. Experian, et. al., No. 23 C 3690, 2023 WL 8113393, at *3–5 (N.D. Ill. Nov. 22, 2023), Judge Pallmeyer ordered a trial under the FAA of arbitrability of an identity theft matter based on the factual conflict between the moving party's authentication of the arbitration clause and the consumer's argument that he never signed/received it because the credit card was procured by identity theft.

U.S. Bank produced two written agreements for each credit card account in support of its motion to compel arbitration. The first three in Document 31 Supplement Joint Report Rule 26(f) were fraudulent arbitration agreements for all three credit card accounts submitted as Document 31-8 Exhibit H is the Platinum Visa which claimed it became effective on August 16, 2022. Document 31-6 Exhibit F is the Altitude Go Visa which claimed it became effective on November 29, 2022. Document 31-7 Exhibit G is the Cash + Visa which claimed it became effective on August 16, 2022. Plaintiff became aware of these fraudulent credit card agreements after reviewing the case exhibits more closely shortly after being compelled to arbitrate in September 2023. These card agreements above shall be hereinafter collectively referred to as the "US Bank Fraud Accounts." Plaintiff provided letters from U.S. Bank that showed two of the three accounts were closed per his request on December 15, 2021. EFC 43. Yet these two agreements show proof that the Defendant allowed an identity thief to open fraud accounts and then used credit reporting and debt collection to pressure Plaintiff to pay for the fraud, knowing the

new 2022 accounts were the product of identity theft. These two account were opened on August 16, 2022 just six days after the court ordered judgment on the Small Claim Case 22STSC02073 which was about disputed transactions not disputed accounts. The last of the three "US Bank Fraud Accounts" card agreements shows proof that on November 29, 2022 another agreement and account was approved in Plaintiffs' name resulting in two Altitude Go accounts being opened and active simultaneously for the same credit card from the same credit card company at the same time. Plaintiff vehemently maintains he never opened any of the "US Bank Fraud Accounts" in 2022. Declaration of Plaintiff Clinton Glen Crisher. ECF 42-1. Plaintiff provided a letter from U.S. Bank that showed they closed the Altitude Go card on April 20, 2023 stating "We are closing your account as we believe the account is being used for fraud." ECF 43.

A party seeking to compel arbitration has the initial burden of showing a written agreement to arbitrate. A.D. v. Credit One Bank, N.A., 885 F.3d 1054, 1063 (7th Cir. 2018). If this burden is satisfied, "[the] party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact" as to whether the parties validly entered into this agreement. Mohammed v. Uber Techs., Inc., 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017) (citing Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002)). In the Seventh Circuit, this evidentiary burden is akin to that of summary judgment under Rule 56: the district court must accept the non-movant's evidence as true and draw all inferences in their favor. Tinder, 305 F.3d at 735. The non-movant will not succeed in resisting arbitration, however, "by generally denying the facts upon which the right to arbitration rests . . . [but] must identify specific evidence in the record demonstrating a material factual dispute for trial." Id. In some cases, limited discovery may be necessary before the court can determine whether

this burden has properly been met. Burks v. Wal-Mart Stores, Inc., No. 12 C 8457, 2013 WL 4777358, at *2 (N.D. Ill. Sept. 5, 2013). If the nonmoving party successfully establishes a genuine dispute of fact on the issue of whether the parties agreed to arbitrate, the FAA dictates that "the court shall proceed summarily to the trial thereof." Kass, 75 F.4th at 700 (citing 9 U.S.C. § 4). The FAA allows that "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Again, limited discovery on the issue of formation may be appropriate before a full trial is scheduled. Bradley v. Meijer Stores L.P., No. 23 CV 1269, 2023 WL 3042984, at *5 (N.D. Ill. Apr. 21, 2023) (citing Deputy v. Lehman Bros., 345 F.3d 494, 509–10, 511 (7th Cir. 2003)).

## A Genuine Dispute of Fact

The Arbitration Provisions to Which Plaintiff Agreed Do Not Apply to the Subsequently Opened Account Numbers in 2022. Plaintiff does not dispute that the original account number for the Platinum Visa Account was -4306, that the original account number for the Cash Plus Account was -7467, or that he accepted the terms of the Card Agreements governing those Accounts. See Declaration of Clinton Glen Crisher ("Crisher Decl."), Dkt. No. 42-1, ¶¶ 5-7. In fact, Plaintiff admits that the Platinum Visa Account number was changed to -4870 and that the Cash Plus Account was changed to -9602 because he received correspondence from U.S. Bank to that effect. Crisher Decl., ¶¶ 15, 19, Dkt. No. 42-1.

Plaintiff has successfully established a genuine dispute of fact on the issue of whether the parties agreed to arbitrate the card agreements in 2022. The Arbitration Provisions to which Plaintiff agreed were included in Document

40-3 The Motion to Compel Arbitration as Document 40-3 Exhibit B, E, H. Exhibit B for the Platinum Visa which became effective on February 27, 2020. Exhibit H for the Altitude Go Visa which became effective on September 10, 2021. Exhibit E for the Cash + Visa which became effective on April 8, 2021.

Plaintiff declared the following in EFC 42-1 "I never activated a credit card on the Platinum Visa Account with an account number ending in -8756." "I never activated a credit card on the Cash Plus Account with an account number ending in either -7176 or -6957." "I never activated a credit card on the Altitude Go Account with an account number ending in either -2843, -3916, or -9976." These account numbers are from the card agreements open without Plaintiffs knowledge and replaced the original card agreements Crisher Agreed to Arbitrate. Indeed, this lawsuit is not about how fraud disputes were handled but rather about Identity Theft.

## FAIR CREDIT REPORTING ACT

The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date. The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003, and the Dodd-Frank Act amended the FCRA in July 2010. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act. Section 609(e)(1) of the FCRA, 15 U.S.C. § 1681g(e)(1), requires a "business entity" to provide an identity theft "victim" with "application and business transaction records" evidencing any transaction that the victim alleges to be the "result of identity theft." The business entity must provide such records "not later than 30 days after the date of receipt of a request from a victim."

For purposes of Section 609(e)(1), a "business entity" is an entity that has "provided credit to, provided for consideration products, goods, or services to, accepted payment from, or otherwise entered into a commercial transaction for consideration with, a person who has allegedly made unauthorized use of the means of identification of the victim[.]" 15 U.S.C.§ 1681g(e)(1).

Section 609(e)(11), 15 U.S.C. § 1681g(e)(11), defines a "victim" as: a consumer whose means of identification or financial information has been used or transferred (or has been alleged to have been used or transferred) without the authority of that consumer, with the intent to commit, or to aid or abet, an identity theft or a similar crime.

To obtain application and business transaction records of the alleged identity theft, the victim must make the request for records in writing and mail it to an address specified by the business entity. 15 U.S.C. § 1681g(e)(3). The records must be provided to the victim or, if specified or authorized by the victim, a law enforcement agency. Prior to providing the records, a business entity can require that the victim provide:

A. proof of his or her identity, such as a copy of the victim's government-issued identification card, 15 U.S.C § 1681g(e)(2)(A); and

B. proof of the claim of identity theft, by providing a police report and a completed affidavit, 15 U.S.C. § 1681g(e)(2)(B).

The FTC also has issued guidance on multiple occasions to businesses seeking to comply with FCRA Section 609(e). Each guidance document states that businesses must provide records directly to victims upon request.

## DEFENDANT'S BUSINESS ACTIVITIES

Plaintiff has been unable to obtain application and business transaction records

related to the identity theft he has suffered. In addition, on several occasions, US Bank failed to respond to Plaintiff - even to issue a denial of his request - within 30 days. Plaintiff expended significant amounts of time submitting and following up on his 609(e) Request, repeatedly complained to Defendant about its failure to grant his requests. He also sent Defendant the language of Section 609(e) of the FCRA as well as copies of the FTC's business guidance about 609(e) Requests in an effort to persuade the company to grant his requests. None of these efforts prompted any records, despite the fact that Plaintiff experienced (and repeatedly reported to Defendant) significant frustration as a result of them. Based on these facts the Defendant is violating laws enforced by the Federal Trade Commission because, among other things, Defendant has knowingly engaged in its unlawful acts and practices for more than two years (December 2021 through June 2024), US Bank continues its unlawful acts or practices despite knowledge of numerous complaints from Plaintiff who has been the victim of identity theft.

## VIOLATIONS OF THE FCRA

### Count I (Failure to Provide Records)

As described above, in numerous instances, Defendant entered into commercial transactions with persons who made unauthorized use of the means of identification of Plaintiff and failed to provide the required application and business transaction records upon request. By and through the acts and practices described, US Bank has violated Section 609(e) of the FCRA, 15 U.S.C. § 1681g(e). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II (Failure to Respond Within 30 Days)

As described, on multiple occasions, Defendant entered into commercial transactions with persons who made unauthorized use of the means of identification of Crisher and refused to provide the required application and business transaction records not later than 30 days after the date of receipt of a request from the Plaintiff. By and through the acts and practices described, US Bank has violated Section 609(e) of the FCRA, 15 U.S.C. § 1681g(e). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

Plaintiff has suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FCRA and the FTC Act. Absent injunctive relief by this Court, Defendant is likely to continue to injure Plaintiff and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empower this Court to grant injunctive and such other relief as the Court may deem appropriate in the enforcement of the FTC Act and the FCRA. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC. Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation, which constitutes a pattern or practice of violations. US Bank's violations of Section 609(e) of the FCRA, were knowing and constituted a pattern or practice

of violations. As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461(a), as amended, the Court is authorized to award a penalty of not more than $3,993 per violation for penalties assessed after February 14, 2019. Each instance in which Defendant has failed to comply with the FCRA in one or more of the ways described above constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under Section 621 of the FCRA. Plaintiff seeks monetary civil penalties for every separate violation of the FCRA. Wherefore, Plaintiff, pursuant to Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b), and Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and the Court's own equitable powers, requests that the Court: award statutory damages of $100.00 per day of noncompliance pursuant to Cal. Penal Code § 530.8(a). Document 69 Exhibit D Plaintiff is also requesting ninety (90) days to conduct arbitration-related discovery pertaining to the formation of the underlying contract and claims of identity theft.

## US BANK'S CLAIMS OF A TYPO IN AAA's INVOICE

U.S. Bank would like the court to believe that it was the AAA, not U.S. Bank, who violated section 1281.97(a)(2), but the February 29 Invoice of $1,650 was for: (1) AAA Arbitrator Listing, Appointment and Review at $250 (2) Case Management Fee at $1400. For a total invoice of $1650 that was due no later than April 1, 2024. This claim of a typo is deceiving since according to a letter from the Arbitrator on April 11, 2024 U.S. Bank was due to receive a refund of $2,500 for the Arbitrator compensation. Exh. A.  The letter makes no mention of the  $1,650 refund which could mean the ACH (late but accurate) never reached the intended destination.

The image of the check U.S. Bank provided is missing nearly 30 security features most notably the Padlock Icon, Thermochromic Heat Sensitive Icon, Foil Hologram, Void Indication, High Resolution Intricate Border, True Watermark and the AAA case number that was requested to be included. AAA also asked if paying by check to send via a trackable delivery service. The Pony Express would have arrived by April 1, 2024 if the check was mailed on March 14, 2024. Regardless of the details surrounding the payments U.S. Bank did not pay within 30 days after the due date, and as the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel Crisher to proceed with that arbitration as a result of the material breach.

## CONCLUSION

For the reasons discussed above, this court should reverse the order of dismissal and vacate the order to compel arbitration because the drafting party U.S. Bank relied on multiple conflicting card agreements to compel arbitration and the Plaintiff has explained that the three agreements from 2022 are the result of fraud and or Identity Theft. U.S. Bank is also in breach of the arbitration agreement, is in default of the arbitration and waves its right to compel the plaintiff to proceed with the arbitration. As a result of the material breach plaintiff also asked that the court impose sanctions to cover the plaintiff's expert fees he paid during arbitration preperation in accordance with California Code, Code of Civil Procedure - CCP § 1281.9

Dated: June 11, 2024

By: /s/ Clinton Glen Crisher

Clinton Glen Crisher

- 15 -   CASE NO. 2:23-CV-02963-SB-PVC

# Exhibit A



AMERICAN ARBITRATION ASSOCIATION | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

P.O. Box 19609
Johnston, RI 02919

April 11, 2024

Clinton G. Crisher
1422 North Kingsley Drive
Apt 110
Los Angeles, CA 90027-5760
Via Mail

Troutman Pepper
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30076
Via Email to: mark.windham@troutman.com

Mark J. Windham

Case Number: 01-23-0004-8093

Clinton Glen Crisher
-vs-
U.S. Bank National Association

Dear Parties:

This letter acknowledges this matter is withdrawn. Therefore, on April 3, 2024, the American Arbitration Association (AAA) reviewed and finalized the billing for this matter and closed this case as withdrawn.

The business will receive a refund of $2500 for arbitrator compensation, which will be mailed from our New York office in approximately one week.

We thank Arbitrator Marks, who is receiving a copy of this correspondence, for serving on this matter.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

Thank you for choosing the AAA to administer your arbitration.

Sincerely,
/s/
AAA Case Administrator 14
Case Administrator
Email: Admin14@adr.org
Supervisor Information:    AAA Case Manager 2, manager2@adr.org
cc:   Allison Ordoñez
      Alexandria Pritchett